

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MWG:DJM
F. #2025R00073

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 2, 2025

By ECF and E-mail

The Honorable Vera M. Scanlon
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Karsem Allen, et al.
            Criminal Docket No. 25-216 (BMC)

Dear Chief Judge Scanlon:

      The government respectfully submits this letter in support of its request that the Court enter orders of detention against defendants Karsem Allen, Carolyn Hicks-Torres, Henry McCummings, Rohnique Posey, and Dominic Smith, whose initial appearances are scheduled before Your Honor later today, July 2, 2025. As described below and in the eleven-count indictment, the defendants participated in a gun-trafficking conspiracy that distributed 29 deadly firearms into the New York City community. All defendants have prior criminal convictions, and two (Hicks-Torres and Smith) are currently under post-conviction supervision. For these reasons, and the reasons set forth in further detail below, the government respectfully submits that the defendants pose a significant danger to the community and a risk of flight. Because there are no condition or combination of conditions that can reasonably secure their appearance as required or the safety of the community, the defendants should be detained pending trial.

I.    Background

    A.    Offense Conduct

      Between December 2024 and June 2025, Allen, Hicks-Torres, McCummings, Posey, and Smith made multiple sales of at least 29 firearms, including semi-automatic handguns, stolen firearms, firearms with obliterated serial numbers, machineguns, and "ghost guns," primarily inside apartment complexes in Queens, New York.

      During each transaction, Posey served as the middle-man and facilitator of the firearms trafficking conspiracy. Posey contacted individuals in advance about the opportunity to illegally buy firearms and organized the sale at one of his two apartment buildings in Arverne,

New York. On some occasions, Posey sold firearms himself, including a stolen HS Produkt Hellcat Pro 9mm caliber pistol. Posey also sold crack cocaine on four occasions.





Posey from
December 13, 2024 Sale

HS Produkt Hellcat Pro from
February 1, 2025 Sale (Reported Stolen)

Glock GMBH Model 21 and Two Bags
of Crack Cocaine from
March 27, 2025 Sale

When Posey coordinated transactions involving other defendants, the plan was largely consistent. The defendants arrived at one of Posey's two apartments and illegally sold firearms, firearms-related components, and ammunition in exchange for cash. Two of the defendants—Allen and Hicks-Torres—illegally obtained firearms in North Carolina from straw purchasers and then drove the weapons up to New York to be sold through Posey. For example, on December 13, 2024, Allen and Hicks-Torres were captured on video surveillance in Posey's apartment building taking the elevator to Posey's apartment.




Allen from December 13, 2024 Sale

Hicks-Torres from December 13, 2024 Sale

Allen and Hicks-Torres then sold three firearms in exchange for cash, including the Taurus GX4 pictured below. On another occasion, on April 2, 2025, the defendants sold five firearms at a residence in Medford, New York, including two firearms that were reported stolen, like the Ruger EC9S pictured below. And on June 16, 2025, Allen and Hicks-Torres sold six firearms at Posey's apartment, including four machinegun conversion devices. These devices, which are pictured below, are designed for converting semi-automatic pistols into machineguns. Neither Allen nor Hicks-Torres had authorization to possess these devices.

2


Taurus GX4 from
December 13, 2024 Sale


Ruger EC9S from
April 2, 2025 Sale


Four Machinegun Conversion
Devices from April 16, 2025 sale

Posey also facilitated the sale of firearms through defendants McCummings and Smith on multiple occasions. For instance, on March 8, 2025, McCummings and Smith arrived together to one of Posey's apartment complexes in Arverne in a gray Jeep bearing a New Jersey license plate (the "Gray Jeep"). As captured on the building's video surveillance system, McCummings and Smith then entered the building and walked to Posey's apartment.


McCummings from
March 8, 2025 Sale


Smith from
March 8, 2025 Sale

In exchange for cash, McCummings proceeded to sell one "ghost gun," specifically, a Geisler Defence, model 1917, 9mm caliber pistol, without a listed serial number. He also sold a box of Federal 9mm ammunition. Following this transaction, law enforcement determined that the Gray Jeep was registered to Smith with a home address in Teaneck, New Jersey. License plate reader ("LPRs") cameras also show the Gray Jeep travelling from New Jersey to New York before the sale of firearms. McCummings continued to sell "ghost guns," which typically do not have serial numbers and therefore are untraceable, as well as firearms with obliterated serial numbers on multiple occasions. Smith participated in many of these transactions.

3

Notably, Smith is currently on federal supervised release following his conviction in the Southern District of New York for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  See United States v. Dominic Smith, No. 22-CR-412 (PMH) (S.D.N.Y.).  Specifically, the Federal Bureau of Investigation determined that Smith was purchasing various gun parts online and was shipping them to a residence in Poughkeepsie, New York.  His billing address for these purchases was an address in Teaneck, New Jersey—the same address where the Gray Jeep is registered.  During a search warrant of Smith's Poughkeepsie residence in connection with his prior case, law enforcement seized numerous gun parts, tools, and ammunition in a gun bag.

In the instant investigation, law enforcement determined that Smith has continued to purchase firearms components online that match firearms components sold by McCummings. For example, multiple firearms had components in common, specifically the same Delta Team Tactical ("DTT") slide bearing a distinct bird's head.  In total, approximately eight firearms were sold by McCummings that have slides resembling the DTT part with the distinct bird's head on or about March 8, March 10, May 12, June 2, and June 23, 2025.  Since Smith purchased these firearms components on multiple occasions from DTT, he is believed to be, once again, assembling firearms.



March 8, 2025 Sale            March 8, 2025 Sale (Zoomed in)

DTT Customs Rona G19 Compatible Full Glock Kit (from DTT website)

4

A chart setting forth the defendants' involvement in the charged conspiracy is included below:

| Sale No. | Sale Date | Defendants Involved | Controlled Substances Purchased | Total Firearms Purchased |
|---|---|---|---|---|
| 1 | 12/13/2025 | Allen Hicks-Torres Posey | N/A | 3 |
| 2 | 1/24/2025 | Posey | 2.827 grams of a substance containing cocaine base | N/A |
| 3 | 1/28/2025 | Posey | 3.200 grams of a substance containing cocaine base | 1 |
| 4 | 2/1/2025 | Posey | N/A | 1 (reported stolen) |
| 5 | 2/20/2025 | Posey | 19.200 grams of a substance containing cocaine base | N/A |
| 6 | 3/8/2025 | Posey McCummings Smith | N/A | 1 |
| 7 | 3/10/2025 | Posey McCummings Smith | N/A | 1 |
| 8 | 3/27/2025 | Posey | 6.752 grams of a substance containing cocaine base (in two bags) | 1 |
| 9 | 4/2/2025 | Allen Hicks-Torres Posey | N/A | 5 (two reported stolen) |
| 10 | 4/16/2025 | Posey | N/A | 1 |
| 11 | 4/21/2025 | Posey McCummings Smith | N/A | 2 (one with obliterated serial number) |
| 12 | 5/12/2025 | Posey McCummings Smith | N/A | 2 |
| 13 | 6/2/2025 | Posey | N/A | 2 |

|    |           | McCummings Smith                |     |                                          |
|----|-----------|---------------------------------|-----|------------------------------------------|
| 14 | 6/5/2025  | Posey McCummings                | N/A | 1                                        |
| 15 | 6/16/2025 | Posey Allen Hicks-Torres        | N/A | 6 [1]                                    |
| 16 | 6/23/2025 | Posey McCummings                | N/A | 2 (both with obliterated serial numbers) |

    B.    Procedural History

On July 1, 2025, a grand jury sitting in the Eastern District of New York returned the instant Indictment. All five defendants are charged with the following offenses: (1) firearms trafficking conspiracy, in violation of 18 U.S.C. § 933(a)(3); (2) firearms trafficking, in violation of 18 U.S.C. §§ 933(a)(1) and 933(a)(2); (3) unlicensed firearms dealing conspiracy, in violation of 18 U.S.C. § 371; and (4) unlicensed firearms dealing, in violation of 18 U.S.C. § 922(a)(1)(A). In addition, Allen and Hicks-Torres are charged with possession of machineguns, in violation of 18 U.S.C. § 922(o)(1), and possession of unregistered firearms, in violation of 26 U.S.C. §§ 5861(d), 5845(a)(6), 5845(b) and 5871; Smith is charged with possession of a defaced firearm, in violation of 18 U.S.C. § 922(k); and Posey is charged with four counts of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

On July 1, 2025, Allen and Hicks-Torres were arrested pursuant to the federal arrest warrant issued in connection with the Indictment. They were taken into custody following a sale of approximately 11 additional firearms in Arverne, which was organized by Posey. And earlier this morning, on July 2, 2025, McCummings, Posey, and Smith were arrested at their respective residences. Multiple firearms, firearms-related components, ammunition, and controlled substances were recovered.

II.    Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

Where (as here, with respect to defendant Posey) a defendant is charged with an offense for which the maximum term of imprisonment is ten years or more as prescribed in the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as

---

[1] Four machinegun conversion devices were also sold during this transaction.

required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). In such a presumption case, the defendant bears a burden of production to come forward with evidence that he does not pose a danger to the community or a risk of flight. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant successfully rebuts the presumption of detention, the presumption "remains a factor to be considered among those weighed by the district court." Id. Ultimately, the government bears the burden of persuasion as to the necessity of detention. Id. It must meet this burden by clear and convincing evidence of danger, see United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991), or by the lesser standard of a preponderance of the evidence that the defendant presents a risk of nonappearance. See United States v. Martir, 782 F.2d 1141, 1146 (2d Cir. 1986).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense. . . involves a . . . controlled substance [or] firearm," (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; Martir, 782 F.2d at 1147 (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer at a detention hearing. United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Ferranti, 66 F.3d at 542.

III.   The Defendants Should Be Detained Pending Trial

As a threshold matter, because the Indictment charges defendant Posey with violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), there is a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(A). In addition, for the reasons described below, the government has met its burden of establishing each of the defendants' dangerousness and risk of

flight sufficient to require their detention.[2] No condition or combination of conditions will ensure their appearance before the Court and the safety of the community. Thus, an order of detention should be entered for each defendant pending trial.

    A.    <u>Nature and Circumstances of the Crime</u>

As the Second Circuit has recognized, "certain types of crimes," including those involving controlled substances and firearms, which are charged in the Indictment, "warrant particular consideration under the rubric of the 'nature and circumstances of the offense charged.'" <u>United States v. Zhang</u>, 55 F.4th 141, 149 (2d Cir. 2022); <u>see also</u> 18. U.S.C. § 3142(g).

Here, as set forth in the Indictment and described above, the defendants actively participated in a firearms trafficking conspiracy that brought nearly 30 dangerous guns into New York City. As the lead organizer of the conspiracy, Posey personally arranged sales on 16 occasions, including multiple sales that involved both firearms and crack cocaine. Each of the sales—except on April 2, 2025—involved transactions in the vicinity of Posey's apartments. For six months, Posey continued coordinating with the other co-defendants to arrange the sales. Allen and Hicks-Torres drove up from North Carolina to New York on three occasions to sell the firearms they illegally purchased through straw purchasers, thus directly contributing to the increase of guns in our community. And for McCummings and Smith, many of the firearms they procured and sold had defaced serial numbers or were "ghost guns," purposefully designed to avoid detection by law enforcement. As described below, since Allen, Hicks-Torres, McCummings, and Smith were each previously convicted of felony offenses, participating in a new firearms conspiracy shows a wanton disregard for the danger inherent in such conduct and a clear disobedience of the law.

    B.    <u>History and Characteristics of the Defendants</u>

Each of the defendants have prior criminal histories, including many with firearms-related offenses, indicating that they were not deterred by prior convictions.

Allen has an extensive criminal history spanning over 30 years in North Carolina and New York, including felony convictions for attempted robbery (in 1997) and attempted criminal sale of controlled substances (in 1999). Notably, on September 24, 2010, he was found guilty after a jury trial of intimidating a victim or witness in the third degree: instilling fear/injury, a felony in violation of New York ("N.Y.") Penal Law § 215.15. He was sentenced to an indeterminate sentence of two to four years' incarceration. On January 4, 2023, Allen was found guilty of assault with a deadly weapon, a misdemeanor in violation of North Carolina G.S. § 14-33(C)(1), and reckless driving to endanger, a misdemeanor in violation of North Carolina G.S. § 20-140(B). He was sentenced to 150 days' incarceration and 18 months' probation for the assault with a deadly weapon. In addition, Allen has a history of bench warrants. There is currently an outstanding warrant for his arrest for aggravated unlicensed operation of a motor

---

[2] All defendants are eligible for detention because they are charged with felonies that involve "the possession or use of a firearm." 18 U.S.C. § 3142(f)(1)(E).

vehicle in the third degree and false personation charges in Suffolk County, New York stemming from an incident in 2016. His driver's license is also suspended.

Hicks-Torres is currently on probation in North Carolina. On or about April 24, 2023, she pleaded guilty, pursuant to an <u>Alford</u> plea, to conspiracy to commit felony larceny, in violation of North Carolina G.S. §14-72(A). She was sentenced to 30 months' probation and was required to forfeit the firearm seized in connection with her case, which initially involved charges for first degree burglary and robbery involving a dangerous weapon. Hicks-Torres also has a prior misdemeanor conviction in July 2022 for making false statements in an application for insurance, in violation of North Carolina G.S. § 58-33-105. She was sentenced to 12 months' probation.

Posey has two prior misdemeanor convictions, including related to narcotics. On December 4, 2022, he pleaded guilty to criminal facilitation in the fourth degree, in violation of N.Y. Penal Law § 115.00. He was sentenced to conditional discharge. On March 15, 2013, Posey pleaded guilty to criminal possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law § 220.03. He was sentenced to five days' incarceration.

McCummings has multiple convictions for firearms-related charges, including felonies. For instance, on June 5, 2000, he pleaded guilty to criminal possession of a loaded firearm in the third degree, a felony in violation of N.Y. Penal Law § 265.02(4). He was sentenced to two years' incarceration. He also has two convictions—both in 2017—for criminal possession of a weapon in the fourth degree: firearm/weapon, a misdemeanor in violation of N.Y. Penal Law § 265.01(1). More recently, on December 21, 2020, he pleaded guilty to attempted assault in the second degree: with intent to cause serious physical injury, a felony in violation of N.Y. Penal Law § 120.05(1). He was sentenced to six months' incarceration.

As noted above, Smith is currently on supervised release in connection with his 2022 conviction in the Southern District of New York for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). His prior felony conviction was from November 19, 2018, when he was sentenced to 364 days' imprisonment for unlawful possession of an assault firearm, in violation of 2C:39-5F in New Jersey.

Thus, three of the defendants—Allen, Hicks-Torres, and Smith—are either currently on a form of post-conviction supervision (Hicks-Torres and Smith) or recently completed terms of probation before committing additional crimes (Allen).

C.      <u>Seriousness of the Danger to the Community</u>

Given the seriousness of the conduct outlined above, and the danger that the defendants' conduct presented to the community, releasing the defendants would present a serious danger to the community. The defendants conspired to flood our community's streets with lethal and easily concealed guns. Allen and Hicks-Torres sold four machinegun conversion devices which allow criminals to convert semi-automatic firearms into fully automatic weapons of war. And Posey contributed to this inherently dangerous conduct by his sale of crack cocaine. The way the defendants sold the guns also endangered our neighbors in Queens: the defendants engaged in these sales within bustling apartment complexes in Arverne. While the sales often

9

occurred inside apartment buildings, the fact that the defendants were transporting these guns in broad daylight—including across state lines—demonstrates the brazenness of the defendants' conduct and an utter disregard for the safety of the community.

Recognizing the danger of illegal guns, courts in this Circuit regularly order pretrial detention in cases involving gun trafficking or possession of firearms. See, e.g., United States v. Peters, No. 25-CR-118 (DLI), 2025 WL 1088029, at *3 (E.D.N.Y. Apr. 11, 2025) (ordering detention and finding defendant "poses a danger to the community based on his participation in a conspiracy to traffic over twenty firearms into New York City"); United States v. McCann, No. 23-CR-08 (WFK), 2023 WL 2857917, at *6 (E.D.N.Y. Apr. 10, 2023) (ordering detention of defendant involved in firearms trafficking conspiracy); United States v. Clarke, No. 22-CR-341 (LDH), ECF Nos. 4, 13, 14 (E.D.N.Y. June 28, 2022) (same); United States v. Smalls, No. 20-CR-126, 2020 WL 1866034, at *1 (S.D.N.Y. Apr. 14, 2020) (affirming magistrate judge's order of detention that was based, in part, on "the general danger to the community posed by [the defendant's] apparently ready access to firearms"); United States v. Williams, No. 20-CR-293-2, 2020 WL 4719982, at *3 (E.D.N.Y. Aug. 13, 2020) ("[T]he danger of Defendant's release is demonstrated through the fact [that] Defendant's instant and past offense involved the use of a firearm."); United States v. Thompson, 436 F. Supp. 3d 631, 636 (W.D.N.Y. 2020) (ordering detention of defendant responsible for firearms and narcotics trafficking offenses); United States v. Gumora, 454 F. Supp. 3d 280, 291 (S.D.N.Y. 2020) (ordering detention of defendant charged with being a felon-in-possession and possession of narcotics on dangerousness grounds, despite contention that his asthma put him at "increased risk of getting severely ill or dying" from COVID-19 while incarcerated); United States v. Harris, No. 19-CR-300, 2020 WL 4014901, at *7 (S.D.N.Y. July 16, 2020) ("Defendant's arrest for being a felon in possession itself raises the specter of danger to the community.").

In addition, the Court may and should consider the defendants' other acts of violence in assessing this factor. See United States v. Choudhry, 941 F. Supp. 2d 347, 359 (E.D.N.Y. 2013) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."). As described above, defendants Allen and McCummings each have convictions for violent conduct. Hicks-Torres is also serving her term of probation in connection with a conviction related to conspiracy to commit felony larceny. The defendants' dangerous conduct, whether pertaining to recent acts of violence or the conduct charged in the Indictment involving ready access to firearms, clearly show that releasing them would pose a serious danger to the public.

D.    Strength of the Evidence

The evidence against the defendants is also particularly compelling. The government intends to prove the defendants' guilt at trial using, among other things, recordings of the sales of firearms, surveillance videos and photographs from law enforcement of the defendants' involvement in the sales, historical cell-site from certain defendants' cellular phones, physical evidence including firearms and ammunition, LPR information, and records showing online purchases of firearms components that were recovered by law enforcement.

10

E.  Risk of Flight

Finally, the defendants pose a significant risk of flight if released. The defendants are each charged with firearms trafficking offenses that carry a term of imprisonment up to 15 years. See 18 U.S.C. § 933(b). On its own, the likelihood of a lengthy term of imprisonment gives the defendants a strong incentive to flee. See United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants faced lengthy term of imprisonment). It also minimizes any risk that pretrial detention would result in an over-served sentence.

The Second Circuit has held that the possibility of a severe sentence—including projected sentences similar to the ones the defendants face here, such as between 78 months' imprisonment on the low end of the Guidelines for Smith and 210 months' imprisonment on the high end of the Guidelines for McCummings—can establish flight risk. See, e.g., United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

Any proposed use of home detention and/or electronic monitoring in lieu of detention is insufficient here in light of the defendants' risk of flight described above. This is especially true for Allen, who has a history of bench warrants and a prior felony conviction for intimidating a victim or witness. Such a proposal for home detention "at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills." United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993); see United States v. Zarrab, No. 15 CR 867 (RMB), 2016 WL 3681423, at *10 (S.D.N.Y. June 16, 2016). Here, such an arrangement is inadequate to ensure that these defendants will not flee.³

---

³  Recent history in this district bears this out, with numerous defendants fleeing or otherwise attempting to thwart electronic monitoring after being released pretrial. See United States v. Svetlana Dali, 24-MJ-645 (JAM) (defendant cut her location monitoring device while on pretrial release and absconded to Canada, where she was apprehended at the border); United States v. Horst Jicha, 23-CR-342 (OEM) (defendant charged with securities fraud and associated crimes cut his location monitoring device while on pretrial release and absconded days before he was supposed to appear for a status conference and remains at large); United States v. Tony Clanton, 23-CR-328 (KAM) (defendant cut his location monitoring device on the eve of trial); United States v. Georges Barker, 23-MJ-27 (SIL) (defendant in an extradition proceeding tampered with his location monitoring bracelet on two occasions before he was remanded); United States v. William Bartell, 22-CR-80 (EK) (defendant charged with multiple bank robberies cut his location monitoring device and absconded within one week of being released on bail due to medical issues); United States v. Joey Macario, 22-CR-342 (HG) (defendant charged with fraud absconded after removing his location monitoring device and discarding it on the subway tracks moments after being released to attend drug treatment); United States v. Dewayne Tripp, 22-CR-336 (MKB) (defendant absconded instead of appearing at a bond revocation hearing and was only located after being arrested for a domestic violence incident); United States v. Marius Lacatis, 22-CR-190 (BMC) (defendant, a Romanian national involved in a fraud

11

IV. <u>Conclusion</u>

   For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will reasonably assure the safety of the community or the defendants' return to court, and therefore requests that the defendants be detained pending trial.

            Respectfully submitted,

            JOSEPH NOCELLA, JR.
            United States Attorney

      By: <u>/s/ Daniel J. Marcus</u>
         Daniel J. Marcus
         Assistant U.S. Attorney
         (718) 254-6280

cc: Clerk of Court (BMC) (by ECF)
   Counsel of Record (by ECF and E-mail)

---

conspiracy, was released on bond following his arrest in California and ordered to report to the Eastern District of New York; instead, he cut his location monitoring device, fled and remains at large); <u>United States v. Marcus Deloatch</u>, 21-CR-457 (ENV) (defendant charged with Hobbs Act robbery cut his location monitoring device and fled in advance of a bail revocation hearing); <u>United States v. Herman Baron</u>, 21-CR-307 (NGG) (defendant charged with narcotics trafficking and COVID fraud cut his location monitoring device and fled the jurisdiction approximately one hour before his scheduled change-of-plea hearing; arrested five months later in the Northern District of Georgia); <u>United States v. Michael Artis</u>, 20-CR-409 (PKC) (defendant released following a violation of supervised release cut his location monitoring device and failed to appear at bail revocation hearing); <u>United States v. Charles May</u>, 19-CR-539 (FB) (defendant charged with armed robbery absconded while on home detention and remains at large); <u>United States v. Theressa Riddle</u>, 17-CR-491 (JS) (defendant released on bond cut her location monitoring device and did not appear for bond violation hearing); <u>United States v. Sinmyah Amera Ceasar</u>, 17-CR-048, 19-CR-117, 22-CR-459 (KAM) (defendant cut her electronic monitoring device and tried to flee the country after the Second Circuit ordered her resentenced and government discovered evidence of her violation release conditions); <u>United States v. Guanghua Shen</u>, 18-CR-302 (MKB) (defendant cut her electronic monitoring device at JFK Airport the day before she was required to self-surrender to the Bureau of Prisons); <u>United States v. Akmal Narzikulov</u>, 13-CR-601 (RJD) (defendant cut his electronic bracelet days after being released on bail); <u>United States v. Julian Tzolov</u>, 08-CR-370 (JBW) (defendant in fraud scheme attempted to flee to Spain while on location monitoring).